PEOPLE v BUGAISKI

Docket No. 194788. Submitted April 10, 1997, at Detroit. Decided June 17, 1997, at 9:20 A.M.

Jody S. Bugaiski was charged in the St. Clair Circuit Court with wilfully and maliciously killing an animal and possession of a firearm while committing or attempting to commit a felony. The defendant admitted that he shot and killed his neighbor's dog, but claimed that the dog was attacking his own dogs and therefore his actions were justified pursuant to § 19 of the Dog Law, MCL 287.279; MSA 12.529. He moved to dismiss the charges, alleging that his dogs were "livestock" as contemplated by § 19 and came within the Dog Law's definition of "livestock" that includes "fur-bearing animals being raised in captivity." MCL 287.261(2); MSA 12.511(2). The court, James P. Adair, J., agreed with the defendant and dismissed the charges. The prosecution appealed.

The Court of Appeals held:

1. The Dog Law specifically defines the term "livestock." The use of the dictionary definition of the term for judicial construction is improper.

2. The Legislature did not intend that dogs be included within the definition of "livestock" as part of the category "fur-bearing animals being raised in captivity."

3. Domestic dogs are not "livestock" for purposes of § 19. Dismissal of the charges was improper.

4. In addition, even if the defendant's dogs were considered "livestock," dismissal of the charges was improper. The fact that the defendant felt that he had a valid defense to the charge of wilfully and maliciously killing an animal, MCL 750.50b; MSA 28.245(b), was not grounds for dismissal before submitting the case to the factfinder.

Reversed and remanded.

ANIMALS — DOG LAW — WORDS AND PHRASES — LIVESTOCK.

The Legislature did not intend that domestic dogs be included within the Dog Law's definition of "livestock" as part of the category "fur-bearing animals being raised in captivity"; domestic dogs are not "livestock" for purposes of the section of the Dog Law that provides that any person may kill any dog that the person sees in the

act of pursuing, worrying, or wounding any livestock (MCL 287.261[2], 287.279; MSA 12.511[2], 12.529).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Elwood L. Brown*, Prosecuting Attorney, and *Shawn P. Jones*, Assistant Prosecuting Attorney, for the people.

*Lee A. Strickler*, for the defendant.

Before: McDonald, P.J., and Reilly and O'Connell, JJ.

McDonald, P.J. The prosecution appeals as of right from an April 23, 1996, order dismissing the charges against defendant. Defendant was charged with wilfully and maliciously killing an animal, MCL 750.50b; MSA 28.245(b), and possession of a firearm while committing or attempting to commit a felony, MCL 750.227b; MSA 28.424(2). We reverse and remand for further proceedings.

Defendant admittedly shot and killed his neighbor's dog. Defendant claimed he shot the dog because the dog was attacking his own dogs and that his actions were justified pursuant to § 19 of the Dog Law, MCL 287.79; MSA 12.529. The Dog Law provides in relevant part:

Any person . . . may kill any dog which he sees in the act of pursuing, worrying, or wounding any *livestock* or poultry or attacking persons, and there shall be no liability on such person, in damages or otherwise, for such killing. [MCL 287.279; MSA 12.529 (emphasis added).]

For the purpose of this act:

(a) "Livestock" means horses, stallions, colts, geldings, mares, sheep, rams, lambs, bulls, bullocks, steers, heifers,

cows, calves, mules, jacks, jennets, burros, goats, kids and swine, and *fur-bearing animals being raised in captivity.* [MCL 287.261(2); MSA 12.511(2) (emphasis added).]

Defendant argued at the hearing regarding the motion to dismiss that his dogs were "livestock" within the meaning of the statute. In support of this argument defendant cited the definitions of "livestock" and "domestic animal" purportedly set forth in Black's Law Dictionary, and on the basis of these definitions urged the trial court to take judicial notice a dog is a domestic animal that meets the definition of "livestock" as contemplated in § 19. Defendant also argued for the first time at the motion hearing his dogs fit within the scope of "fur-bearing animals being raised in captivity" and that "in fairness" the trial court should interpret the term livestock "as broadly as it can be." Defendant cited no authority for such a request. The trial court apparently agreed with defendant and dismissed the charges.[1]

A fundamental rule of statutory construction is that courts must ascertain and give effect to the intent of the Legislature. *Welch Foods, Inc v Attorney General,* 213 Mich App 459; 540 NW2d 693(1995). The first consideration in determining intent is the specific lan-

---

[1] The trial court did not specifically state the basis of its ruling. The court stated:

> I've reviewed the transcript of [the preliminary examination]. I've also reviewed [defense counsel]'s motion, the citation of cases and law, including definitions from *Black's Law Dictionary,* the exhibits attached, which was the police report, and I think substantially all the transcript of the [preliminary examination].

> The Court believes based on the law and the examination of the transcript of the testimony that was had, that the charge contained in the Information should be dismissed, and so the Court does dismiss both Counts contained in the information.

guage of the statute. *Id.* Judicial construction is permitted only if the language is unclear and susceptible to more than one interpretation. *Id.* Here, the statute specifically defines the term "livestock," thereby rendering use of defendant's proposed definition improper.

The only question remaining is whether the Legislature intended that dogs be included within the definition of "livestock" as part of the category "fur-bearing animals being raised in captivity." We conclude it did not. The fact the Legislature listed "fur-bearing" animals as a separate category within the laundry list of "livestock" indicates a specific intent to distinguish these animals from the rest of the list *on the basis of their fur-bearing characteristic*, presumably at least in partial recognition of the commercial value of furs. Dogs are not so distinguished. Moreover, the deliberate use of the modifying phrase "being raised in captivity" implies the fur-bearing animals contemplated in the category are not normally held in captivity. Again, dogs do not belong in this category. Additionally, if we accepted defendant's position that dogs come within the intent of the terms "fur-bearing" and "raised in captivity," the same argument could be made with regard to almost every other animal already listed in the "livestock" definition, thereby rendering most of the individual animal listings superfluous. In construing a statute, a court should presume that every word has some meaning, and should avoid a construction that would render a statute or any part of it surplusage or nugatory. *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341; 561 NW2d 138 (1997).

The statutory interpretation doctrine of ejusdem generis also dictates a finding the Legislature did not contemplate dogs as being "fur-bearing animals being raised in captivity." Ejusdem generis provides when a statute contains general words following a designation of particular subjects, the meaning of the general words is presumed to be restricted by the particular "kind, class, character, or nature as those specifically enumerated." *Welch Foods, supra,* p 464. Here, the similar trait of the separately listed "livestock" animals is that they are all farm animals raised for profit. Ejusdem generis therefore dictates that the general term "fur-bearing animals being raised in captivity" take on the same significance. Dogs do not belong in this class.

Finally, we find some guidance in the definition of the term "fur-bearing animals" contained in a provision of the Natural Resources and Environmental Protection Act regarding hunting and fishing licensing. The relevant provision states:

> "Fur-bearing animals" includes badger, beaver, bobcat, coyote, fisher, fox, lynx, marten, mink, muskrat, opossum, otter, raccoon, skunk, weasel, and wolf.[MCL 324.43503(5); MSA 13A.43503(5).]

Dogs obviously do not fall within this definition.

We conclude domestic dogs are not "livestock" for purposes of § 19. Dismissal of the charges filed against defendant on these grounds was improper. Additionally, even if defendant's dogs were considered "livestock" within the purview of the statute we would still find dismissal of the charges improper. Defendant was charged and bound over for trial on the charge of wilfully and maliciously killing an

animal. MCL 750.50b; MSA 28.245(b). That defendant felt he had a valid defense to the charge was not grounds for dismissal before submitting the case to the factfinder. Defendant's version of the incident, that his dogs were being attacked, was by no means conceded by the prosecution.

Reversed and remanded for further proceedings. We do not retain jurisdiction.